IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AMERICAN NATIONAL PROPERTY
AND CASUALTY COMPANY,
a foreign insurer,

      Plaintiff,

vs.                                                                                    Civ. No. 19-1024 KG/KK

JOHN HAROLD WHISENANT, individually
and as THE PERSONAL REPRESENTATIVE
OF THE ESTATE OF JOYCE MOWERY
WHISENANT, the ESTATE OF JOYCE MOWERY
WHISENANT, WHIZ REALTY, L.L.C., a New
Mexico Limited Liability Company, and WHIZWAY
FARM, L.L.C., a New Mexico Limited Liability Company,
WHIZ FAMILY, L.L.C., a New Mexico Limited Liability
Company, WHIZWAY INVESTMENT & FACILITY
DEVELOPMENT, L.L.C., a New Mexico Limited Liability
Company, ELIAS BARELA, individually and as assignee
and successor in interest to JANICE WITTROCK, an
Involuntary Defendant,

      Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

      This matter comes before the Court upon Defendants John Harold Whisenant and Estate

of Joyce Mowery Whisenant's (collectively, the Whisenants) Motion to Dismiss and to Abstain,

filed on December 18, 2019. [1]  (Doc. 11).  Plaintiff responded on January 9, 2020, and the

Whisenants replied on January 23, 2020.  (Docs. 17 and 19).  Having reviewed the Motion to

Dismiss and to Abstain, the accompanying briefing, and American National Property and

Casualty Company's Complaint for Declaratory Judgment and Relief (Federal Complaint)

---

[1] Joyce Mowery Whisenant, John Harold Whisenant's wife, died in 2019.  *See* (Doc. 11) at 2
(noting that Mrs. Whisenant was "dying of cancer" in 2019).

(Doc.1), the Court grants the Motion to Dismiss and to Abstain in that it will dismiss this lawsuit without prejudice for lack of federal subject matter jurisdiction.

## I. Background

This insurance declaratory judgment lawsuit arises from a state lawsuit concerning a real estate dispute.  In November 2018 Defendant Elias Barela, individually and as the assignee and successor in interest to Janice Wittrock, an involuntary Defendant, (Barela) filed the underlying state lawsuit in the Thirteenth Judicial District Court, County of Valencia, State of New Mexico. In September 2019 Barela filed a Second Amended Civil Complaint for Damages (Second Amended State Complaint) in that lawsuit.  (Doc. 1-1) (attached to Federal Complaint).

### A. The Second Amended State Complaint

Barela alleges that Mr. and Mrs. Whisenant owned the following limited liability companies:  Whiz Realty, LLC; Whizway Farm, LLC; Whiz Family, LLC; and Whizway Investment & Facility Development LLC (collectively, the LLCs, and now Defendants in this federal lawsuit). Barela alleges that "Mr. Whisenant and/or Mrs. Whisenant" acted individually as well as alter egos of the LLCs.  (Doc. 1-1) at ¶ 8.  Indeed, Barela alleges that "Mr. Whisenant and/or Mrs.  Whisenant dominated and controlled" the LLCs.  *Id.*  Mrs. Whisenant was also a qualified broker for Whiz Realty, LLC.  *See id.* at ¶ 60.

Barela alleges that in 2007 he owned a parcel of land in Valencia County located next to two parcels of land owned by the LLCs.  *Id.* at ¶¶ 8, 16-18. The three parcels of land were zoned as Agricultural Reserve.  *Id.* at ¶ 29.  Barela asserts that in 2007 he and Mr. Whisenant entered into an agreement to combine the parcels of land to create the Rancho De Los Chavez subdivision.  *Id.* at ¶¶ 20-27.

To create the subdivision, Barela and Mr. Whisenant submitted a 2008 request to the Board of County Commissioners of Valencia County to amend the zoning of the parcels of land to Rural Residential. *Id.* at ¶¶ 29 and 31. According to Barela, the Board of County Commissioners of Valencia County approved the zoning change in 2009. *Id.* at ¶ 34.

Several persons, however, sued the Board of County Commissioners of Valencia County, Barela, and Mr. Whisenant in state court over the zoning change. *Id.* at ¶ 36. After that litigation terminated, the Board of County Commissioners of Valencia County conditionally approved the Rancho De Los Chavez Preliminary Plat in 2016. *Id.* at ¶¶ 42-43, 46.

Despite the approval of the preliminary plat, Barela alleges that "Mr. Whisenant refused to go forward with the agreement to create the Rancho De Los Chavez Subdivision." *Id.* at ¶ 49. According to Barela, in 2017, Mr. Whisenant, acting individually and as a representative of the LLCs, advertised that the two parcels of land owned by the LLCs were for sale as agricultural land. *Id.* at ¶¶ 50-51. Barela asserts that in June 2018 Mr. Whisenant entered into an agreement with Joseph Gallegos to purchase the two parcels of land owned by the LLCs. *Id.* at ¶¶ 53-54.

In November 2018, prior to the completion of that purchase agreement, Barela filed his state lawsuit in which he sued Mr. and Mrs. Whisenant and the LLCs for failure to abide by the agreement to create the Rancho De Los Chavez subdivision. Gallegos then temporarily halted the sale of the two parcels of land due to a *lis pendens* related to Barela's state lawsuit. *Id.* at ¶¶ 55-58. Although Barela's state lawsuit was still pending, Barela alleges that in May 2019 "Mr. Whisenant and Mrs. Whisenant, as the qualified broker for Defendant Whiz Realty, LLC," sold the two parcels of land to Gallegos. *Id.* at ¶ 60. In September 2019 Barela filed the Second Amended State Complaint to add Gallegos as a Defendant. *See* (Doc. 11) at 2.

Barela brings numerous claims in his lawsuit but does not seek a sum certain for damages. *Id.* at ¶¶ 64-124.  Pertinent to this Motion to Dismiss and to Abstain, Barela brings a negligent misrepresentation claim against Mr. Whisenant, individually.[2]  *Id.* at ¶¶ 94-99.

Barela attached to the Second Amended State Complaint a "Total Project Budget for RANCHO DE LOS CHAVEZ 2-2-17."  (Doc. 1-6).  That document indicates that Barela and Janice Wittrock would pay an estimated $95,944.62 to create the Rancho De Los Chavez subdivision while Mr. Whisenant would pay an estimated $413,857.50.  *Id.* at 2-3.  Mr. Whisenant already paid $63,807.41 toward creating the Rancho De Los Chavez subdivision.  *Id.* at 2. The total estimated cost of the project was $573,609.43.  *Id.* at 1.

Barela also attached to the Second Amended State Complaint a portion of an American Land Title Association (ALTA) title insurance commitment form.  *Id.* at 4.  That form indicates that Whiz Farm, LLC owned the two parcels of land that Gallegos purchased.  *Id.*

The Court takes judicial notice that in April 2020 the Whisenants and Whiz Realty, LLC, filed in Barela's state lawsuit a third-party complaint against American National Property and Casualty Company (Plaintiff in this federal lawsuit), Continental Casualty Company (CCC), and Rice Insurance Services Company, LLC (Rice).[3]  New Mexico Case Lookup, Thirteenth Judicial

---

[2]Barela alleges that *Mr. Whisenant* made "material misrepresentations;" "*Mr. Whisenant* knew the falsity of the representations … and/or he recklessly made the false representations;" and "*Mr. Whisenant* made false representations with the intent to deceive and to induce [Barela] to rely on the representations…."  (Doc. 1-1) at ¶¶ 95, 97, and 98 (emphasis added).  *See Robey v. Parnell*, 2017-NMCA-038, ¶ 31, 392 P.3d 642 (explaining that "[t]o recover under a theory of negligent misrepresentation, a plaintiff must show that: (1) the defendant made a material representation to plaintiff, (2) the plaintiff relied upon the representation, (3) the defendant knew the representation was false or made it recklessly, and (4) the defendant intended to induce reliance by the plaintiff").

[3] Rice "is the program administrator for the New Mexico Real Estate Commission's" group insurance policy, which protects real estate licensees and real estate firms from liability for certain acts arising out of their professional services.  (Doc. 11-1).  CCC issued this group policy, which named Mrs. Whisenant as an insured.  *Id.*  Whiz Realty, LLC and Mrs. Whisenant's estate

District Court, Valencia County, Case No.: D-1314-CV-2018-01322; *see also Binford v. United States*, 436 F.3d 1252, 1256 n. 7 (10th Cir. 2006) (acknowledging that "court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record"). Barela's state lawsuit remains pending.

### B.  The Federal Complaint

The Whisenants state that after Barela filed the Second Amended State Complaint, Mr. and Mrs. Whisenant "requested that [Plaintiff] provide a defense for the negligence claim under their homeowner and umbrella policy." (Doc. 11) at 2.  The Court assumes that the Whisenants refer to the negligent misrepresentation claim against Mr. Whisenant, individually, the only negligence claim raised in the state lawsuit.  According to the Whisenants, Plaintiff "provided a defense under a reservation of rights" and subsequently filed this federal declaratory judgment action against the Whisenants, the LLCs, and Barela.  *See Id.* at 3.  Plaintiff seeks a declaration that the homeowner and umbrella insurance policies, both issued to Mr. and Mrs. Whisenant and naming only Mr. and Mrs. Whisenant as insureds, do not provide coverage for the Whisenants, the LLCs, or Barela.

Plaintiff alleges that the Court has diversity subject matter jurisdiction over this lawsuit. To establish diversity subject matter jurisdiction, Plaintiff alleges both diversity of citizenship and an amount in controversy in excess of $75,000.  *See* 28 U.S.C. § 1332(a)(1).  More particularly, Plaintiff alleges diversity of citizenship between it, a foreign corporation with its principal place of business in Missouri, and Defendants, all New Mexico citizens.  (Doc. 1) at ¶¶ 1-8.  With respect to the $75,000 amount in controversy, Plaintiff contends that the "aggregate liability limits" of the homeowner and umbrella insurance policies exceed $75,001.  *Id.* at ¶ 9.

---

requested that CCC provide a defense with respect to Barela's state lawsuit.  *Id.*  In December 2019 CCC denied that requested coverage.  *Id.*

Plaintiff also contends that "Defendants have made a demand upon Plaintiff in excess of $75,001.00, exclusive of interests and costs, but including attorney's fees, punitive damages, reimbursement for damages already paid and damages for future expenses." *Id.* at ¶ 10.  Finally, Plaintiff contends that the total estimated project cost to create the Rancho De Los Chavez subdivision, $573,609.43, demonstrates that the amount in controversy exceeds $75,001.  *Id.*

## II.  The Motion to Dismiss and to Abstain

The Whisenants move under Fed. R. Civ. P. 12(b)(1) to dismiss this lawsuit for lack of federal subject matter jurisdiction.  The Whisenants specifically contend that Plaintiff "has failed to allege facts sufficient to meet its burden of proof that the amount in controversy exceeds $75,000." (Doc. 11) at 1.  The Whisenants also move under Fed. R. Civ. P. 12(b)(6) to dismiss all Defendants, except the Whisenants.  (Doc. 11) at 3-4.  Finally, if the Court does not dismiss this lawsuit, the Whisenants "request[] that the Court abstain from hearing this matter or stay this action until the conclusion of the underlying lawsuit." *Id.* at 1.  Plaintiff opposes the Motion to Dismiss and to Abstain in its entirety.

## III.  Discussion

The Court must decide whether it has federal subject matter jurisdiction over this lawsuit before it can decide the Rule 12(b)(6) and abstention/stay issues.  Hence, the Court addresses the Rule 12(b)(1) motion to dismiss first.

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1).  It is well-established that "[f]ederal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994).  Furthermore, the

plaintiff bears the "burden ... to establish the court's subject matter jurisdiction by a preponderance of the evidence." *Southway v. Cent. Bank of Nig.,* 328 F.3d 1267, 1274 (10th Cir. 2003).

Generally, Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th 1995).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.

(citations omitted).  In this case, the Court construes the Rule 12(b)(1) "motion as a facial attack and notes that consideration of documents attached to or referenced in a complaint generally do not convert a facial attack to a factual one." *Cole v. Goossen*, 402 F.Supp.3d 992, 1003 n.7 (D. Kan. 2019).  The Court, therefore, accepts the factual allegations in the Federal Complaint as true for its Rule 12(b)(1) analysis.

A federal court has diversity subject matter jurisdiction in suits between "citizens of different states" where the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a)(1).  The amount in controversy is an "estimate of the amount that will be put at issue in the course of the litigation." *McPhail v. Deere & Co.,* 529 F.3d 947, 956 (10th Cir. 2008).

In the context of an insurance coverage dispute case, like this one, the Tenth Circuit has articulated the following method to determine the amount in controversy:

> Where an insurer denies his obligations under a liability insurance policy on the theory either that the accident was not within the coverage of the policy or that such policy was void, the amount in controversy is measured by the injured third party's bona fide claim against the insured, unless this exceeds the maximum limit of the policy, In [sic] which event the amount in controversy is the maximum limit of the insurer's liability under the policy.

*Farmers Ins. Co. v. McClain*, 603 F.2d 821, 823 (10th Cir. 1979) (citation omitted).  Here, neither Barela, the injured third party, nor Plaintiff allege what specific amount of damages Barela seeks from Mr. Whisenant, Plaintiff's insured, for the alleged negligent misrepresentation.  Plaintiff merely asserts that the "aggregate liability limits" of the homeowner and umbrella insurance policies exceed $75,001.  *See* (Doc. 1) at ¶ 9.  The Court cannot determine from that assertion what amount of damages Barela seeks from Mr. Whisenant for the alleged negligent misrepresentation, let alone if that amount exceeds $75,000.  In other words, Plaintiff has failed to allege facts in the Federal Complaint from which the Court can calculate an amount in controversy under *Farmers Ins. Co.*

The Whisenants argue, on the other hand, that the Court should apply the New Mexico Uniform Jury Instruction (UJI) concerning damage to real property to determine the amount of controversy.  *See* NMRA, Rule 13-1819 (2020 ed.).  That UJI requires that jurors determine "the value of the property immediately before the occurrence and immediately after the occurrence.  The difference between these two figures is the legal measure of damages to real property."  *Id.*

The Court notes that the Whisenants requested that Plaintiff "provide a defense for the negligence claim," which Barela pled as a negligent misrepresentation claim against Mr. Whisenant, individually.  *See* (Doc. 11) at 2; (Doc. 1-1) at ¶¶ 94-99.  New Mexico courts have held that "while diminution of value is relevant as a measure of damages for injury to real property, … the measure of damages for a negligent misrepresentation is that which is necessary to compensate for pecuniary loss caused by the misrepresentation." *Cobb v. Gammon*, 2017-NMCA-022, ¶ 46, 389 P.3d 1058 (citations omitted).  "[S]uch damages include 'the difference between the value of what he has received in the transaction and its purchase price or other value given' and pecuniary loss suffered as a consequence of reliance upon the misrepresentation." *Id.*

8

(quoting *Restatement (Second) of Torts* § 552B(1) (1977)).  "[D]amages for negligent misrepresentation are determined by out-of-pocket loss or reliance damages."  *First Interstate Bank of Gallup v. Foutz*, 1988-NMSC-087, ¶ 8, 107 N.M. 749.

Neither Barela nor Plaintiff allege an amount of pecuniary or reliance damages Barela incurred as a result of Mr. Whisenant's alleged negligent misrepresentation.  Rather, Plaintiff argues "that the amount in controversy as it relates to Defendant John Whisenant is, at least, $413,857.50."  (Doc. 17) at 5.  Mr. Whisenant's *estimated* project cost, however, does not reflect pecuniary or reliance damages Barela incurred due to Mr. Whisenant's alleged negligent misrepresentation.  Likewise, Barela's *estimated* project cost of $95,944.62 does not reflect pecuniary or reliance damages Barela incurred because of any alleged negligent misrepresentation by Mr. Whisenant.  Interestingly, Mr. Whisenant purportedly suffered an actual pecuniary loss of $64,807.41.

Alternatively, Plaintiff notes that "[i]f multiple defendants are jointly liable, or jointly and severally liable, on some of the claims, … the amounts of those claims may be aggregated to satisfy the amount-in-controversy requirement as to all Defendants jointly liable for the claims." *Aguayo v. AMCO Ins. Co.*, 59 F.Supp. 3d 1225, 1241 (D.N.M. 2014).  Plaintiff contends that Barela "has asserted claims against all of the Whiz entities in addition to the individually named parties, drawing little or no distinction between the potential liability/exposure faced by each named Defendant." [4]  (Doc. 17) at 4.  Moreover, Plaintiff argues that "Whizway Farms, LLC, is jointly and severally liable" because Mr. and Mrs. Whisenant were owners and members of Whizway Farm, LLC, which in turn owned the two parcels of land at issue.  *Id.* at 7.  Also, given that the Second Amended State Complaint alleges that Mr. and Mrs. Whisenant were acting as

---

[4] The "Whisenants concede that the amount in controversy for John and Joyce can be combined, they are each named insureds."  (Doc. 19) at 6.

agents for the LLCs, Plaintiff asserts that "each LLC can be held jointly and severally liable for the actions of" the Whisenants.  *Id.* at 7.  Plaintiff, therefore, concludes that it "has articulated a sufficient factual basis to demonstrate that Whizway Farm, LLC, along with the remaining LLCs, can be held jointly and severally liable for its members and owners, John and Joyce Whisenant."  *Id.*

Even if the Court assumes that the Whisenants and the LLCs are jointly and severally liable for damages caused by Mr. Whisenant's alleged negligent misrepresentation and that the Court can aggregate those damages, neither Barela nor Plaintiff have alleged facts to show the amount of aggregated damages amount.  Plaintiff only cites aggregated policy limits and estimated project costs.

Finally, the Court notes that although Plaintiff alleges in the Federal Complaint that "Defendants have made a demand upon Plaintiff in excess of $75,001.00, exclusive of interests and costs, but including attorney's fees, punitive damages, reimbursement for damages already paid and damages for future expenses," Plaintiff does not raise this allegation in its response to the Motion to Dismiss and to Abstain.  *See* (Doc. 1) at ¶ 10.  Given Plaintiff's failure to pursue this allegation, the Court determines that Plaintiff has abandoned any assertion that Defendants' demand establishes an amount in controversy in excess of $75,000.  *See Briddell v. United States*, 2012 WL 3268658, at *2 n. 3 (Fed. Cl.) (noting that plaintiff "appears to have abandoned his allegation that the Contract Disputes Act … provides a basis for jurisdiction" because "he did not elaborate in either the complaint or his response to defendant's motion [to dismiss for lack of jurisdiction] how his allegations implicate the CDA"); *cf. Morshaeuser v. Citimortgage, Inc.*, 2012 WL 5289383, at *4 n.5 (E.D. La.) (finding that defendant "seems to have abandoned the

federal question basis for jurisdiction by failing to rely on it in response to the plaintiffs' motion to remand").

The Court concludes that Plaintiff has not proven by a preponderance of the evidence that an estimated $75,001 "will be put at issue in the course of the litigation." *See McPhail,* 529 F.3d at 956. Consequently, Plaintiff has not established federal diversity subject matter jurisdiction. The Court, therefore, grants the Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction and will dismiss this lawsuit without prejudice. *See Brown v. Buhman*, 822 F.3d 1151, 1179 (10th Cir. 2016) (noting that dismissal for lack of subject matter jurisdiction is not adjudication of merits and, thus, "dismissal … must be without prejudice") (citation omitted)). In light of that determination, the Court need not address the Rule 12(b)(6) motion to dismiss or to decide the abstention/stay issues.

IT IS ORDERED that the Motion to Dismiss and to Abstain (Doc. 11) is granted in that the Court will dismiss this lawsuit without prejudice.

_____
UNITED STATES DISTRICT JUDGE